UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK



PAULA LAZETTE MOORE,

        Plaintiff,

-v-

CITY OF NEW YORK,
JACQUELYN O. MCKNIGHT,
BEVERLY JAMES,

        Defendants.

No. 16-cv-7358 (RJS)
OPINION AND ORDER

RICHARD J. SULLIVAN, District Judge:

Plaintiff Paula Lazette Moore ("Moore") brings this action against the City of New York and individual Defendants Jacqueline McKnight ("McKnight") and Beverly James ("James"), alleging employment discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e *et seq.*) ("Title VII"), 42 U.S.C. § 1981 ("Section 1981"), and 42 U.S.C. § 1983 ("Section 1983"). Now before the Court is Defendants' motion to dismiss the Second Amended Complaint for failure to state a claim upon which relief may be granted under Federal Rule of Civil Procedure 12(b)(6). (Doc. No. 20.) For the following reasons, Defendants' motion is granted.

I. BACKGROUND

A. Facts[1]

Moore, an African-American woman, began working in the New York City Department of Human Resources Administration, which later became the Administration for Children's Services

---

[1] The following facts are drawn from the Second Amended Complaint, filed on March 3, 2017 (Doc. No. 16 ("Complaint" or "Compl.")), and exhibits attached thereto, which include an August 18, 2015 notice of disciplinary charges against Moore (Doc. No. 16-1), a termination letter (Doc. No. 16-2), and a letter from Moore to Defendant Beverly James (Doc. No. 16-3). *See Bldg. Indus. Elec. Contractors Ass'n v. City of New York*, 678 F.3d 184, 187 (2d Cir. 2012) (noting that courts at the motion-to-dismiss stage may consider documents attached to the complaint). In ruling on Defendants' motion, the Court has also considered Defendants' memorandum of law (Doc. No. 21 ("Mem.")), Plaintiff's opposition (Doc. No. 27 ("Opp'n")), and Defendants' reply (Doc. No. 28 ("Reply")).

("ACS"), in 1990. (Compl. ¶¶ 4, 15.) Until 2007, her official title at ACS was Child Protective Specialist, a position that did not require residence in New York City. (*Id.* ¶ 15.) Her title then changed to Associate Staff Analyst, a position that, unbeknownst to Moore at the time, did require residence in New York City. (*Id.* ¶¶ 16–17, 20.) On November 19, 2015, Moore was terminated for the stated reason that she had failed to meet the residency requirement. (*Id.* ¶ 19.)

In the months leading up to her termination, Moore was investigated by the City's Department of Investigation regarding an alleged conflict of interest involving her role in a contract that had been awarded to an ACS vendor. (*Id.* ¶ 24.) Investigators interviewed her about those allegations (*Id.* ¶ 25) and, according to Moore, after she denied involvement in awarding the contract, the Department of Investigation ("DOI") "cleared [her] of any wrongdoing" (*Id.* ¶ 26).

On September 2, 2015, however, at a conference with the ACS legal department, Moore received "charges and specifications" accusing her of, among other things, using her position as a public servant to obtain financial gain, failing to report a financial interest in a firm that she knew or should have known was engaged in business dealings with the City, and failing to notify ACS of her position at a university that also does business with the City. (*Id.* ¶ 27; Doc. No. 16-1.) At the conference, Moore provided ACS with a New Jersey business registration certificate, which contained her New Jersey residential address. (Compl. ¶ 28.) Two weeks later, ACS offered Moore a settlement regarding the conflict-of-interest charges, whereby Moore would admit that she violated the conflict-of-interest regulations and receive five days' suspension without pay. (*Id.* ¶ 29.) Moore rejected the settlement offer. (*Id.* ¶ 30.)

On October 27, 2015, Moore received a "Notice of Non-Compliance with City Residency Requirement Letter," which informed her that her title required City residency and instructed her to report for an interview. (Doc. No. 16-2.) Three days later, Moore sent Defendant James, her supervisor at ACS, a letter requesting a meeting to discuss the conflict-of-interest charges and the

2

questions regarding her City residence. (Compl. ¶¶ 11, 23, 32; Doc. No. 16-3.) Moore's letter concluded by stating, "I would like to meet with a union representative to resolve these matters because I feel my employment is being threaten[ed], as well as, I feel like I am being discriminated against." (Doc. No. 16-3.) The Complaint does not indicate whether that meeting ever took place.

At the residency compliance interview on November 12, 2015, Moore presented several purported proofs of City residency. (Doc. No. 16-2.) However, she initially refused to provide a copy of her 2014 New York State Income Tax Return, on the ground that it contained personal information. (*Id.*) She also stated that she lacked a New York State Identification Card, New York State Driver's License, or New York utility bill. (*Id.*) Moore later submitted a copy of her 1040 Tax Return for the 2014 tax year, which indicated that she lived in Englewood, New Jersey. (*Id.*) A few days later, on November 19, 2015, Moore was notified that she was being terminated for violating the residency requirement. (Compl. ¶¶ 18–19; *Id.*) Thereafter, she was replaced by a black woman of Caribbean descent. (Compl. ¶ 33.)

## B. Procedural History

On September 20, 2016, Moore commenced this action alleging national origin and race discrimination and retaliation in violation of Title VII, Section 1981, and Section 1983. (Doc. No. 1.) In addition to her claims against the City, Moore brought Section 1981 claims against McKnight and James, who were at all relevant times ACS management employees.

Moore filed her First Amended Complaint about a month later. (Doc. No. 3.) On January 19, 2017, the Court held a pre-motion conference to discuss Defendants' contemplated motion to dismiss the First Amended Complaint for failure to state a claim. At the conference, the Court advised Moore's counsel that the complaint, as written, likely did not allege sufficient facts to support an inference of discriminatory intent because it lacked information about whether Moore was similarly situated to the African-Caribbean co-workers she had identified as comparators. (Doc. No. 33 at 5–

6, 11.) The Court gave Moore 45 days to amend her complaint. (*Id.* at 23.) On March 3, 2017, Moore filed her Second Amended Complaint. (Doc. No. 16.) Now before the Court is Defendants' motion to dismiss, which was filed on April 5, 2017 (Doc. No. 20) and fully briefed on May 30, 2017.[2]

## II. LEGAL STANDARD

To withstand a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must "provide the grounds upon which [the] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007); *see also* Fed. R. Civ. P. 8(a)(2) ("A pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief . . . ."). To meet this standard, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In reviewing a Rule 12(b)(6) motion to dismiss, a court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *ATSI Commc'ns*, 493 F.3d at 98. That tenet, however, "is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. Thus, a pleading that offers only "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. If the plaintiff "ha[s] not nudged [its] claims across the line from conceivable to plausible, [its] complaint must be dismissed." *Id.* at 570.

---

[2] Moore indicates in her opposition brief that she is no longer pursuing her Section 1981 and Section 1983 claims against the City. (*See* Opp'n at 18.) Accordingly, those claims are waived. *See Banno v. City of New York*, No. 06-cv-2270 (RJS), 2015 WL 845709, at *3 (S.D.N.Y. Feb. 25, 2015).

4

III. DISCUSSION

A. Discrimination Based on National Origin and Race

Moore claims that she was terminated on the basis of her race, which she identifies as black, and her national origin, which she identifies as African-American. (Compl. ¶¶ 56, 60.) Title VII makes it unlawful for an employer "to discriminate against any individual . . . because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). By contrast, Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts . . . and to the full and equal benefit of all laws and proceedings . . . as is enjoyed by white citizens." 42 U.S.C. § 1981(a). Thus, Section 1981 "outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment" based on race, *Patterson v. Cty. of Oneida, N.Y.*, 375 F.3d 206, 224 (2d Cir. 2004), but does not prohibit discrimination based on national origin, *Anderson v. Conboy*, 156 F.3d 167, 172-73 (2d Cir. 1998) ("It is . . . settled that Section 1981 does not prohibit discrimination on the basis of gender or religion, national origin, or age."). Section 1983 provides a civil remedy for deprivations under Section 1981. *See Patterson*, 375 F.3d at 225; 42 U.S.C. § 1983. Because "[t]he same core substantive standards that apply to claims of discriminatory conduct in violation of Title VII are also applicable to claims of discrimination in employment in violation of [Section] 1981," *Wiercinski v. Mangia 57, Inc.*, 787 F.3d 106, 113 (2d Cir. 2015) (citations and internal quotation marks omitted), this Court analyzes them in tandem unless otherwise noted. *See Yan v. Ziba Mode Inc.*, No. 15-cv-47 (RJS), 2016 WL 1276456, at *3 (S.D.N.Y. Mar. 29, 2016).

A plaintiff alleging employment discrimination in violation of Title VII or Section 1981 must "include reference to sufficient facts to make [her] claim plausible . . . in light of the presumption that arises in the plaintiff's favor [set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)] in the first stage of the litigation." *Littlejohn v. City of New York*, 795 F.3d 297, 310 (2d Cir.

5

2015). Accordingly, "what must be plausibly supported by facts alleged in the complaint," consistent with the *McDonnell Douglas* framework, "is [1] that the plaintiff is a member of a protected class, [2] was qualified, [3] suffered an adverse employment action, and [4] has at least minimal support for the proposition that the employer was motivated by discriminatory intent." *Littlejohn*, 795 F.3d at 311. Defendants concede, for the purposes of their motion, that Moore is a member of a protected class and suffered an adverse employment action (namely, termination). (Doc. No. 29 at 15.) Thus, the key issues are whether Moore was qualified for her Associate Staff Analyst position and whether the Complaint raises a sufficient inference that Defendants fired her because of her race or national origin.

As to her qualifications, Moore alleges that she has "always performed her job duties and responsibilities satisfactorily" and "has always received performance evaluations that stated [she] was exceeding expectations." (Compl. ¶¶ 21, 22.) To be "qualified" for a position, however, an employee must not only be capable of performing the work; she must also satisfy the employer's conditions of employment. *Jackson v. Univ. of New Haven*, 228 F. Supp. 2d 156, 159 (D. Conn. 2002) (citing *Thornley v. Penton Publ'g*, 104 F.3d 26 (2d Cir. 1997)); *see also Egbuna v. Time-Life Libraries, Inc.*, 153 F.3d 184 (4th Cir. 1998). In the Complaint, Moore admits that she has lived in New Jersey since 1990 and that her former position – Associate Staff Analyst – requires New York residency. (Compl. ¶¶ 16, 35.); *see also* N.Y.C. Admin. Code § 12-120. Thus, Moore appears to concede that she failed to meet one of her former employer's conditions of employment. To be sure, the existence of such conditions will not defeat an otherwise viable claim of discrimination if the conditions are applied in a discriminatory manner. *See Jackson*, 228 F. Supp. 2d at 162 (citing *Howley v. Town of Stratford*, 217 F.3d 141, 151 (2d Cir. 2000)). But the Complaint contains no allegations to that effect. Rather, Moore alleges merely that ACS "authorized other African-Caribbean employees to reside . . . outside of New York City and these employees were not terminated," without specifying whether those

employees occupied positions subject to the residency requirement, like Moore's job after 2007, or exempt from that requirement, like Moore's job before 2007. (Compl. ¶ 36.)

Moreover, even if Moore were "qualified" in the relevant sense, she would still need to allege facts supporting an inference of discriminatory intent. To raise such an inference, Moore primarily attempts to make "[a] showing of disparate treatment – that is, a showing that the employer treated plaintiff less favorably than a similarly situated employee outside [her] protected group," which is a "recognized method of raising an inference of discrimination for purposes of making out a *prima facie* case." *Mandell v. Cty. of Suffolk*, 316 F.3d 368, 379 (2d Cir. 2003) (citations and internal quotation marks omitted). However, a "plaintiff must compare herself to employees who are 'similarly situated in all material respects,'" *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999) (quoting *Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 63 (2d Cir. 1997)), which is dependent on "whether the plaintiff and those [s]he maintains were similarly situated were subject to the same workplace standards[,]" *Graham v. Long Island R.R.*, 230 F.3d 34, 40 (2d Cir. 2000). Here, as discussed above, and as the Court highlighted at the January 19, 2017 pre-motion conference, although Moore identifies African-Caribbean employees who were permitted to reside outside of New York City (Compl. ¶¶ 36–37, 45–46), there is no indication that those employees were "similarly situated in all material respects" because there is no indication that their positions were subject to the same residency requirement as Moore's. Accordingly, Moore's race and national-origin discrimination claims under Title VII and Section 1981 must be dismissed.

## B. Retaliation

Moore also contends that Defendants retaliated against her in violation of Title VII and Section 1981. (Compl. ¶¶ 64, 68.) To establish a prima facie case of retaliation under those statutes, a plaintiff must show: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the

protected activity and the adverse employment action." *Littlejohn*, 795 F.3d at 316 (citation and internal quotation marks omitted). As with discrimination claims, "[t]he allegations in the complaint need only give plausible support to the reduced *prima facie* requirements that arise . . . in the initial phase of [employment discrimination] litigation." *Id.* With respect to the first element of a prima facie case, protected activity "refers to action taken to protest or oppose statutorily prohibited discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 566 (2d Cir. 2000), *superseded on other grounds by* N.Y.C. Local L. No. 85.

Here, Moore alleges that she was terminated in retaliation for two activities. First, she alleges that she was terminated for refusing ACS's settlement offer regarding the conflict-of-interest allegations. But Moore's refusal of that settlement offer cannot plausibly be construed as "action taken to protest or oppose" unlawful discrimination, and there is no indication that the City could reasonably have understood it as such. "Implicit in the requirement that the employer [was] aware of the protected activity is the requirement that it understood, or could reasonably have understood, that the plaintiff's opposition was directed at conduct prohibited" by Title VII or Section 1981. *Galdieri-Ambrosini v. Nat. Realty & Dev. Corp.*, 136 F.3d 276, 292 (2d Cir. 1998). Although the Complaint vaguely suggests that the conflict waiver policy was discriminatorily administered (*see* Compl. ¶¶ 45–46), it does not allege any facts indicating that Moore's employer was aware, or should have been aware, that her rejection of the settlement offer had anything to do with perceived racial or national-origin discrimination.

Second, Moore alleges that she was terminated for complaining to James about unspecified "discriminat[ion]" she believed she was experiencing in the workplace. (Compl. ¶¶ 32, 34.) Significantly, in an October 30, 2015 letter to James, Moore summarized her grievances regarding the DOI investigation, the subsequent charges, and her residency issues. (Doc. No. 16-3.) But at no point did she link any of those grievances to unlawful discrimination. In the final sentence of the

letter, Moore stated that she "fe[lt] like her employment is being threaten[ed], as well as . . . like I am being discriminated against," but nothing in the letter indicates that Moore believed she was being treated differently because of her race, national origin, or any other protected status. (*Id.*) The law is clear that such a cursory reference to an unexplained feeling of generic "discrimination" is, by itself, insufficient to place an employer on notice of a protected complaint. *Kelly v. Howard I. Shapiro & Assocs. Consulting Eng'rs, P.C.*, 716 F.3d 10, 17 (2d Cir. 2013) ("Although particular words such as 'discrimination' are certainly not required to put an employer on notice . . . neither are they sufficient to do so if nothing in the substance of the complaint suggests that the complained-of activity is, in fact, unlawfully discriminatory."). Accordingly, Moore fails to state a claim for retaliation.

IV. CONCLUSION

For the reasons stated above, IT IS HEREBY ORDERED THAT Defendants' motion to dismiss is GRANTED. The Clerk of Court is respectfully directed to terminate the motion pending at docket number 20.

SO ORDERED.

Dated: March 8, 2018
New York, New York

RICHARD J. SULLIVAN
United States District Judge